UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RADIO MUSIC LICENSE COMMITTEE, INC. <br><br> Petitioner, <br><br> v. <br><br> AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS; and BROADCAST MUSIC, INC., <br><br> Respondents. | Civil Action No.: 1:22-cv-5023 <br><br> **PETITION OF RADIO MUSIC LICENSE COMMITTEE, INC. FOR THE DETERMINATION OF REASONABLE FINAL LICENSE FEES** |

**PETITION OF RADIO MUSIC LICENSE COMMITTEE, INC.
FOR THE DETERMINATION OF REASONABLE FINAL LICENSE FEES**

1.  Petitioner Radio Music Licensing Committee, Inc. ("RMLC") is a non-profit Tennessee corporation that represents the interests of commercial radio stations concerning music licensing matters, including the negotiation and documentation of licenses from the major music performing rights organizations (known as "PROs"). The Respondents in this action are the two largest PROs in the United States: the American Society of Composers, Authors and Publishers ("ASCAP") and Broadcast Music, Inc. ("BMI"). Each of ASCAP and BMI are subject to antitrust consent decrees entered in this judicial district stemming from their pooling of interests in vast amounts of copyrighted musical works for which they set prices. *See* citations *infra* ¶¶ 2–3. RMLC files this Petition pursuant to § IX(A) of the ASCAP consent decree and § XIV of the BMI consent decree, respectively, for the determination of reasonable license fees and terms from each of ASCAP and BMI applicable to RMLC members' public performances of compositions in those PROs' repertories.

**INTRODUCTION**

2. Respondent ASCAP entered into a consent decree with the Department of Justice in 1942, which has since been amended. *United States v. ASCAP*, 1940-1943 Trade Cas. ¶ 56,104 (S.D.N.Y. 1941), *as amended by* No. 42–245, 1950 WL 42273, at *1 (S.D.N.Y. Mar. 14, 1950) (1950-51 Trade Cas. ¶ 62,595), *as amended by* 1960 Trade Cas. ¶ 69,612 (S.D.N.Y. Jan. 7, 1960), *as amended by* No. 41-1395 (WCC), 2001 WL 1589999, at *1 (S.D.N.Y. June 11, 2001) (the "ASCAP Decree"). The ASCAP Decree restricts ASCAP's conduct and entitles entities making public performances of the ASCAP repertory to seek a judicial determination of reasonable ASCAP license fees under § IX of the ASCAP Decree.

3. Respondent BMI entered into a consent decree with the Department of Justice in 1966, which has since been amended. *United States v. Broad. Music, Inc.*, 1966 Trade Cas. (CCH) ¶¶ 71,941, 83,323 (S.D.N.Y. 1966), *amended by* No. 64-civ-3787, 1994 WL 901652, at *1 (S.D.N.Y. Nov. 18, 1994) (1996-1 Trade Cas. (CCH) ¶ 71,378) (the "BMI Decree"). The BMI Decree restricts BMI's conduct and entitles entities making public performances of the BMI repertory to seek a judicial determination of reasonable BMI license fees under § XIV of the BMI Decree.

4. Petitioner RMLC has made a written application on its members' behalf to secure reasonable license fees and terms from each of ASCAP and BMI for the license term commencing on January 1, 2022 and carrying forward through December 31, 2026 (the "License Term"). RMLC has negotiated with each of ASCAP and BMI; and in each case, negotiations have not been successful and the parties remain far apart. By this Petition, RMLC seeks determinations of reasonable license rates and terms against each of ASCAP and BMI for their respective repertories. Specifically, RMLC seeks reasonable rates and terms for blanket licenses, adjustable-fee blanket

licenses and per-program licenses, from each of ASCAP and BMI, for the License Term. The licenses requested are to cover public performances of all ASCAP-affiliated and BMI-affiliated musical compositions for which an ASCAP and/or BMI license is required on a through-the-audience basis by the RMLC member stations (including transmissions via broadcasting through FCC-licensed terrestrial analog signals, HD radio or multicast channels, or by means of FM translators, as well as transmissions by means of the internet or other publicly accessible IP transmission path or mobile, wireless or other communication network).

## **PARTIES**

5. RMLC is a 501(c)(6) non-profit corporation existing under the laws of Tennessee, with a principal office address of 1616 Westgate Circle, Brentwood, Tennessee, 37027. RMLC represents the interests of the United States commercial radio industry concerning music licensing matters, with a primary mission of achieving fair and reasonable license fees on behalf of thousands of radio stations with music licensing organizations including ASCAP and BMI. RMLC's member stations play music, broadcast sports events and deliver the news to millions of listeners across the country. RMLC is dedicated to negotiating licenses that reflect the realities of the current and changing state of the radio business, as well as negotiating fees that accurately reflect the value of each PRO's repertory to its member stations based on the share of total composition performances licensed by a given PRO to RMLC's members.

6. ASCAP is an unincorporated membership association operating as a music PRO claiming to license the musical works of more than 850,000 composers, songwriters and

publishers,[1] with its principal office located at 250 West 57th Street, New York City, New York 10107.

7. BMI is a Delaware corporation operating as a music PRO on a non-profit-making basis that claims to license the musical works of approximately 1.2 million composers, songwriters, and publisher affiliates (with a repertory including more than 18.7 million musical works),[2] with its principal office located at 7 World Trade Center, 250 Greenwich Street, New York, New York 10007.

## JURISDICTION

8. This Court has jurisdiction under 28 U.S.C. § 1331 and § 1337 because the proceedings that gave rise to each of the ASCAP Decree and the BMI Decree were brought pursuant to federal antitrust laws. *See*, *e.g.*, *ASCAP*, 2001 WL 1589999, at *1 ("This Court has jurisdiction of the subject matter hereof and of all parties hereto. The Complaint states a claim upon which relief may be granted against ASCAP under Section 1 of the Sherman Act, 15 U.S.C. § 1."); *see also BMI*, No. 64-Civ-3787, at *1 (noting "[t]his Court has jurisdiction of the subject matter of this action and of the parties . . . under Sections 1 and 2 of the Act of Congress of July 2, 1890").

9. Under § IX(A) of the ASCAP Decree, this Court has continuing jurisdiction over ASCAP to determine reasonable license fees and terms governing the public performance of musical works in the ASCAP repertory by music users such as RMLC's members. RMLC invokes that jurisdiction in seeking a determination of reasonable ASCAP rates and terms for blanket licenses, adjustable-fee blanket licenses and per-program licenses for the License Term.

---

[1] *About Us*, ASCAP, https://www.ascap.com/about-us.

[2] *BMI Member FAQs*, BMI, https://www.bmi.com/faq/category/about.

10. Likewise, under § XIV of the BMI Decree, this Court has continuing jurisdiction over BMI to determine reasonable license fees and terms governing the public performance of musical works in the BMI repertory by music users such as RMLC's members. RMLC invokes that jurisdiction in seeking a determination of reasonable BMI rates and terms for blanket licenses, adjustable-fee blanket licenses and per-program licenses for the License Term.

11. Before the Music Modernization Act (Pub. L. 115-264, title I, § 104, Oct. 11, 2018, 132 Stat. 3726) (the "MMA") was enacted in 2018, petitions to determine rates and terms under each of the ASCAP Decree and BMI Decree were required to be filed in the Southern District of New York and referred to the Judge having jurisdiction over the ASCAP Decree and BMI Decree, respectively. In practice, therefore, Judge Denise Cote handled petitions involving ASCAP, and Judge Louis Stanton handled petitions involving BMI.

12. The MMA changed the assignment system for ASCAP and BMI "Rate Court" petitions. Rather than automatically assigning petitions to Judge Cote and Judge Stanton, the new law specifies that each rate court petition "shall be . . . randomly assigned to a judge" in the Southern District of New York. 28 U.S.C. § 137(b). The law further prohibits assigning a petition to "a judge to whom continuing jurisdiction over any performing rights society consent decree is assigned or has previously been assigned" (in other words, Judges Cote and Stanton). *Id.* The new law thus eliminates the pre-MMA requirement that ASCAP and BMI Rate Court petitions proceed separately before different judges.

13. In accordance with these MMA provisions, RMLC files this Rate Court Petition against both ASCAP and BMI. Under the MMA, RMLC's application cannot be assigned to Judge Cote or Judge Stanton. *Id.* But any other judge is eligible, other than "a judge to whom another

proceeding concerning an application for the determination of a reasonable license fee is assigned at the time of the filing of the application" (*id.*); there is currently no such judge in this district.[3]

14.     The MMA permits a single judge to hear an application against ASCAP and BMI together. Nothing in the statute says otherwise. And powerful interests in judicial economy counsel in favor of hearing the matter as one action. First, the corpus of music performed by the RMLC stations for which a reasonable ASCAP license fee determination and a reasonable BMI license fee determination are being sought is identical. Second, the License Term for which ASCAP and BMI fee determinations are being sought is identical. Third, the legal standard governing the determination of reasonable fees for ASCAP and BMI is identical. Finally, it is only through such a unitary proceeding that RMLC will be able to secure relief from being "whipsawed" by ASCAP's and BMI's historic licensing practices, where each PRO has been able to claim artificially high market shares without having to face the other PRO in the same proceeding. *See infra* at ¶¶ 21–22. Separate proceedings before different judges of this District against each of ASCAP and BMI therefore would be grossly inefficient and unwarranted. Where, as here, the circumstances warrant a unitary action against both ASCAP and BMI, jurisdiction before a single judge in this District is appropriate.

## FACTS PERTINENT TO THE PETITION

15.     RMLC has made a written application on behalf of its member stations to each of ASCAP and BMI for reasonable license fees and terms for the License Term.

16.     ASCAP, to date, has not proffered to RMLC any specific fee proposal for the License Term.

---

[3] Other than a pre-MMA case presently before Judge Stanton, no other judge is currently assigned an application for a determination of a reasonable ASCAP or BMI license fee.

17. BMI has proposed a license fee for the License Term that is manifestly unreasonable. BMI has proposed an approximately two-thirds increase in the percentage-of-revenue rate for RMLC stations compared to the rate BMI agreed to with RMLC just two years ago.

18. The most recent RMLC licensing arrangements with each of ASCAP and BMI covered the license period January 1, 2017, to December 31, 2021. The blanket license rate under the ASCAP–RMLC agreement covering that 2017–2021 term was 1.73% of licensee net revenues, as defined in the agreement. That rate was tied to a representation in the parties' agreement that ASCAP controlled, as of the date of execution in December 2016, 48.5% of the total interests (controlled by all the PROs in the aggregate) in the universe of musical works transmitted via RMLC station programming. That representation turned out to be false and overstated. BMI claimed that its share of total performances on RMLC stations was higher than ASCAP's during the 2017–2021 license period and ultimately agreed with RMLC on 2017–2021 blanket license fees based on a rate of 1.78% of licensee net revenues as defined in the agreement.

19. The foregoing demonstrates that upon expiration on December 31, 2021, of the most recent negotiated agreements between RMLC and each of ASCAP and BMI, RMLC stations were paying a combined ASCAP and BMI royalty equivalent to 3.51% of stations' net revenues. Those license arrangements involved the identical sellers and largely equivalent repertories as are at issue in this Petition. Moreover, the data available to RMLC demonstrates that the combined ASCAP and BMI share of total performances on RMLC stations has diminished since the time when the prior agreements were entered into. That fact, taken together with the fact that the ASCAP and ensuing BMI 2017–2021 RMLC rates were inflated by the fact that ASCAP had overstated its represented share of RMLC station performances in the 2017–2021 RMLC-ASCAP

agreement, indicates that the combined 3.51%-of-net-revenues license rates for ASCAP and BMI combined were significantly higher than would have been the case had ASCAP accurately represented its share of RMLC station performances as of December 2016.

20. Nevertheless, in an effort to avoid burdening this Court and to avoid the costs associated with litigation of this matter, RMLC in May 2022 asked each of ASCAP and BMI whether it would be willing to roll forward the total ASCAP and BMI 3.51%-of-net-revenues royalty pool under the 2017–2021 agreements, *provided* that each of ASCAP and BMI would agree on a mechanism for assessing their relative shares of RMLC station performances that would govern how much of that 3.51%-of-revenue pool each of ASCAP and BMI would be entitled to.

21. The number of performances of works controlled in whole or in part by ASCAP and BMI (and each of their percentage shares of ownership associated with "split works" in which they control less than 100%) is a matter of objective fact. Thus, in assessing each of ASCAP's and BMI's share of the total universe of performed works in which ASCAP/BMI controls interests, the sum of each organization's share of aggregate ASCAP and BMI shares cannot add up to more than 100%. Yet, historically, each of ASCAP and BMI have presented claims to RMLC that its share of ASCAP and BMI-controlled performances is much higher than what the other PRO claims, such that the sum of the parts is much greater than the whole. This is the kind of "whipsawing" that RMLC has been victimized by historically—and from which RMLC seeks relief in this proceeding.

22. RMLC in May 2022 proposed to each of ASCAP and BMI that, for the License Term effective January 1, 2022, it would be inclined to recommend to the RMLC stations a license structure whereby RMLC stations would pay each of ASCAP and BMI provisionally in 2022 based on the expired 2017–2021 rates of 1.73% and 1.78%, respectively; and then the final fee for each

year of the License Term would be calculated six months in arrears based on a unitary share-assessment mechanism. RMLC understands that ASCAP and BMI historically have used different methodologies for assessing their "shares" (which has led to the "whipsawing" referenced, *supra* ¶¶ 14, 21); and integral to RMLC's proposal was that a single share-assessment mechanism would be determined either via a negotiated agreement among RMLC, ASCAP and BMI *or* by a mediation/arbitration procedure if the parties were unable to agree on the share assessment mechanism.

23. ASCAP rejected the proposal outlined above and BMI never responded.

24. RMLC's offer set forth above was made subject to Federal Rule of Evidence 408. RMLC reserves its right to seek a determination in these proceedings of reasonable ASCAP and BMI license fees and terms on alternative terms and conditions, unrelated to the foregoing proposal, and as supported by the evidence to be proffered in these proceedings.

25. RMLC and ASCAP have been unable to reach an agreement concerning reasonable fees for the licenses to the ASCAP repertory requested by RMLC. It has been more than 60 days since RMLC provided ASCAP with its written request for a license under § IX(A) of the ASCAP Decree, and more than 60 days since ASCAP made a request for information, making this Petition ripe thereunder.

26. RMLC and BMI have been unable to reach an agreement concerning reasonable fees for the licenses to the BMI repertory requested by RMLC. It has been more than 60 days since BMI advised RMLC in writing of the fee which it deems reasonable for the license requested under § XIV of the BMI Decree, and the parties have been unable to agree, making this Petition ripe thereunder.

**RELIEF REQUESTED**

27. RMLC requests that the Court determine reasonable final fees and terms for blanket licenses, adjustable-fee blanket licenses and per-program licenses, for each of ASCAP's and BMI's respective repertories, for the License Term of January 1, 2022, through December 31, 2026.

28. ASCAP and BMI shall have the burden of proof to establish the reasonableness of the fee requested by it. ASCAP Decree, § IX(B); BMI Decree, § IXV(A). If ASCAP and BMI do "not establish that the fee requested by it is a reasonable one, then the Court shall determine a reasonable fee based upon all the evidence." ASCAP Decree, § IX(D); BMI Decree, § IXV(A).

29. To determine a reasonable fee, a court must "determine the fair market value of a blanket license for the public performance of music." *In re Pandora Media, Inc.*, 6 F. Supp. 3d 317, 353 (S.D.N.Y. 2014), *aff'd* 785 F.3d 73 (2d Cir. 2015). "In so doing, the rate-setting court must take into account the fact that [the PROs], as a monopolist, exercises market-distorting power in negotiations for the use of its music." *Id.* Because "there is no competitive market in music rights," fair market value is a "hypothetical" matter. *ASCAP v. Showtime/The Movie Channel*, 912 F.2d 563, 577 (2d Cir. 1990).

30. RMLC further requests that the fees set by the Court be made retroactive to January 1, 2022 pursuant to § IX(A) of the ASCAP Decree and § XIV(B) of the BMI Decree.

- 11 -

Dated: June 15, 2022

Respectfully Submitted.

/s/ *Kenneth L. Steinthal*

David P. Mattern (*pro hac vice* forthcoming)
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, DC 20006-4707
Telephone: (202) 207-3945
dmattern@kslaw.com

Kenneth L. Steinthal (KS-7897)
Ethan P. Davis
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA  94111
Telephone: (415) 318-1200
ksteinthal@kslaw.com
edavis@kslaw.com

Benjamin A. Torres (*pro hac vice* forthcoming)
KING & SPALDING LLP
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
btorres@kslaw.com

Amanda R. Farfel (*pro hac vice* forthcoming)
KING & SPALDING LLP
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
afarfel@kslaw.com

*Counsel for Radio Music License Committee, Inc.*