```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
RADIO MUSIC LICENSE COMMITTEE, INC.,                             :
                                                                 :
                          Petitioner,                            :
                                                                 :            22 Civ. 5023 (JPC)
              -v-                                                :
                                                                 :               ORDER
                                                                 :
AMERICAN SOCIETY OF COMPOSERS, AUTHORS                           :
AND PUBLISHERS et al.,                                           :
                                                                 :
                          Respondents.                           :
                                                                 :
-----------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Petitioner Radio Music License Committee, Inc. ("RMLC")[1] initiated this action on June 15, 2022 by filing a petition for the determination of reasonable final license fees under two consent decrees, one entered against each of the Respondents, American Society of Composers, Authors, and Publishers ("ASCAP") and Broadcast Music, Inc. ("BMI"), two performing rights organizations. BMI's consent decree was entered in *United States v. Broadcast Music, Inc.*, No. 64 Civ. 3787 (LLS) (S.D.N.Y.), a case currently before the Honorable Louis L. Stanton. Pursuant to 28 U.S.C. § 137(b)(1)(B), "any application for the determination of a license fee for the public performance of music in accordance with the applicable consent decree shall be made in the district court with jurisdiction over that consent decree" and randomly assigned to a judge other than the judge with jurisdiction over the consent decree or a judge to whom another proceeding for the

---

[1] As alleged in the Petition, RMLC "is a non-profit Tennessee corporation that represents the interests of commercial radio stations concerning music licensing matters, including the negotiation and documentation of licenses from the major music performing rights organizations." Dkt. 1 ¶ 1.

determination of a reasonable license fee is assigned. Under this provision, this case was randomly assigned to the undersigned upon initiation.

On July 8, 2022, BMI notified the Court that it had moved for a construction of its consent decree before Judge Stanton on that same day. Dkt. 24. BMI sought a determination from Judge Stanton that its consent decree prohibited a petition for the determination of reasonable license fees from proceeding in the same action against both it and another entity, *i.e.*, ASCAP. *See* Dkt. 25-1 at 1. As a consequence of BMI's application for construction of its consent decree, this Court stayed this case on July 19, 2022 pending a final resolution of that application pursuant to 28 U.S.C. § 137(b)(2). Dkt. 31; *see* 28 U.S.C. § 137(b)(2) ("If any such application is made in connection with a rate proceeding, such rate proceeding shall be stayed until the final determination of the construction application.").

In a Memorandum Opinion and Order dated May 26, 2023, Dkt. 34, Judge Stanton determined that ASCAP should be severed from this action, with those portions of RMLC's Petition related to ASCAP assigned to another judge in this District. *See United States v. Broad. Music, Inc.*, No. 64 Civ. 3787 (LLS), 2023 WL 3788859, at *1 (S.D.N.Y. May 26, 2023).[2] Following that determination, RMLC moved to continue the stay of this action, advising that it had appealed Judge Stanton's decision and taking the position that the mandatory stay under 28 U.S.C. § 137(b)(2) continued until the resolution of that appeal. Dkt. 36. BMI opposed the motion, arguing that Judge Stanton's decision constituted "the final determination of the construction

---

[2] Judge Stanton explained that, consistent with 28 U.S.C. § 137(b)(1)(B), the severed case involving ASCAP should not be assigned to the undersigned or to the Honorable Denise L. Cote to whom the consent decree involving ASCAP is assigned, *see United States v. Am. Soc'y of Composers, Authors & Publishers*, No. 41 Civ. 1395 (DLC) (S.D.N.Y.), but rather to a judge "who does not have an application for the determination of a reasonable license and to whom no action has been assigned in which a judgment has been entered retaining jurisdiction over any music performing rights licensing organization." *Broad. Music*, 2023 WL 3788859, at *1.

2

application" for purposes of subsection 137(b)(2), and that therefore the stay should be lifted. Dkt. 37 at 2. On June 7, 2023, the Court ordered additional briefing on this issue. Dkt. 38. RMLC filed a supplemental brief on June 15, 2023, Dkt. 39 ("RMLC Brief"), and BMI provided its own on June 22, 2023, Dkt. 40 ("BMI Brief").

Resolution of this dispute requires the Court to interpret the phrase, "the final determination of the construction application," in 28 U.S.C. § 137(b)(2) and, in particular, resolve whether a "final determination of the construction application" includes any appeal of the district court's construction. This appears to be an issue of first impression in any court.

The Court begins with the statute itself. At the onset, the Court notes that 28 U.S.C. § 137 is titled "Division of business among district judges." Turning to the statutory text, subsection (b)(1)(B) then makes the first reference to an "application" for construction of a consent decree. That subsection states that "any application for the determination of a license fee for the public performance of music in accordance with the applicable consent decree shall be made in the district court with jurisdiction over that consent decree and randomly assigned to a judge of that district court according to the rules of that court for the division of business among district judges, provided that any such application shall not be assigned to" (i) the judge with jurisdiction over the consent decree or "(ii) a judge to whom another proceeding concerning an application for the determination of a reasonable license fee is assigned at the time of the filing of the application." 28 U.S.C. § 137(b)(1)(B). Subsection 137(b)(2) further states that nothing in the prior subsection "shall modify the rights of any party to a consent decree . . . to make an application for the construction of any provision of the applicable consent decree. Such application shall be referred to the judge to whom continuing jurisdiction over the applicable consent decree is currently assigned." *Id.* § 137(b)(2).

Thus, in each instance the term "application" for consent decree construction is employed in the statutory text, other than the instance immediately at issue, it unquestionably refers to an application before a district court or a specific district court judge. *Id.* § 137(b)(1)(B) ("any application . . . shall be made in the district court" "provided that such application shall not be assigned to . . . a judge to whom another proceeding concerning an application for the determination of a reasonable license fee is assigned at the time of the filing of the application"); *id.* § 137(b)(2) ("Such application shall be referred to the judge to whom continuing jurisdiction over the applicable consent decree is currently assigned."). And indeed, the provision at issue immediately follows the latter mention that the consent decree application shall be referred to the judge with continuing jurisdiction over the consent decree—a clear reference to a district judge— and even repeats the preceding sentence's use of "such application." *Id.* Considering the text as a whole, this suggests that the "construction application" referred to in "the final determination of the construction application" also refers to a construction application *before the district court*.

RMLC resists this reading of subsection 137(b)(2), pointing largely on the presence of the word, "final." RMLC Brief at 3-6. RMLC argues that the term "final determination" must refer to a decision of an appellate court because "final" means "marking the last stage of a process; leaving nothing to be looked for or expected; ultimate," *id.* at 4 (internal quotation marks and brackets omitted), and that it is the decision of an appellate court which will be the last decision on a matter of consent decree construction. RMLC further argues that "determination" means "a judicial decision settling and ending a controversy." *Id.* (internal quotation marks omitted). Therefore, RMLC reasons, the district court's decision in a construction application is already a "determination," which would render the word "final" superfluous if it referred solely to the district court's decision. *Id.*

The strength of RMLC's arguments largely turns on the availability of immediate appellate review of a district court's decision on the construction application when that decision does not otherwise resolve the merits of the litigation—*i.e.*, the related fee petition, as would be the case here.  If appellate review is unavailable, then no decision other than the district court's decision could be the "final determination" of the construction application.[3]  In 2018, section 104 of the Music Modernization Act amended 28 U.S.C. § 137 to add subsection (b)(2).  *See* Pub. Law 115-264 Title I, § 104 (2018).  Prior to that amendment, applications for construction of a consent decree proceeded before the judge who presided over the rate case in which the construction was needed.  *See*, *e.g.*, *WPIX, Inc. v. Broad. Music, Inc.*, No. 09 Civ. 10366 (LLS), 2011 WL 1630996 (S.D.N.Y. Apr. 28, 2011); *see also, generally*, *WPIX, Inc. v. Broad. Music, Inc.*, No. 09 Civ. 10366 (LLS) (S.D.N.Y.).  In this District, such rate cases were generally assigned as related to the judge with jurisdiction over the case in which the relevant consent decree was entered.  *See* Text Entry, *WPIX, Inc.*, No. 09 Civ. 10366 (LLS) (S.D.N.Y. Dec. 21, 2009).  Back then, a decision on a construction application was not an appealable final decision of the district court merely because it decided a construction application.  *See* Mandate, *WPIX, Inc.*, No. 09 Civ. 10366 (LLS) (S.D.N.Y. Jan. 20, 2012), Dkt. 56 ("Upon due consideration, it is hereby ORDERED that the motion [for dismissal of the appellant's interlocutory appeal] is GRANTED because this Court [*i.e.*, the Second Circuit] lacks jurisdiction to adjudicate the appeal.").

Nothing in the text of 28 U.S.C. § 137 indicates that the 2018 amendments were meant to alter this analysis.  The provisions merely alter which particular judge in a district resolves a rate petition, while ensuring that centralized interpretation of a given consent decree remains with the

---

[3] As explained *infra*, if a decision on a construction application were not considered a "final determination," thereby keeping the mandatory stay in place, yet at the same time appealable only after the resolution of the fee petition, the stay would be unending.

judge having jurisdiction over that consent decree and that any rate case in connection with a construction application is stayed pending the other judge's construction. In other words, 28 U.S.C. § 137(b)(1)(B) changes which judge would resolve a construction application, but says nothing to indicate that the effect of that resolution would be altered such that a previously non-appealable decision now is appealable. This suggests that it is the final decision of the district judge presiding over the construction decree on the construction application that constitutes the "final determination of the construction application"—because it is only after that decision that no other decision on construction that will impact the rate case will follow. Nor does this interpretation render the word "final" superfluous since, as BMI argues, an initial construction determination by the district court may be subject to reconsideration before becoming final. BMI Brief at 5.

The main problem with RMLC's reading of the statute is that not all, and likely not many, resolutions of a construction application will mean an end to a litigation on the merits of a rate determination[4] "leaving nothing for the court to do but execute the judgement."[5] *Rodgers*, 101 F.3d at 251. But pursuant to subsection 137(b)(2), the underlying rate case is to remain stayed until the "final determination of the construction application." 28 U.S.C. § 137(b)(2). If an appellate court cannot review the district court's decision on the construction application until the rate case is decided, but the rate case cannot be unstayed until after the appellate court has reviewed

---

[4] Now that subsection 137(b)(2) requires the underlying rate case to be assigned to a judge other than the one deciding the construction application, it seems particularly unlikely that a pure construction application would end a litigation on the merits. *See United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) ("With limited exceptions not relevant in this case, the jurisdiction of federal courts of appeals is limited to appeals from final decisions of the district courts. Final decisions are those that end the litigation on the merits, leaving nothing for the court to do but execute the judgment." (internal citation omitted)).

[5] The Court notes that Judge Stanton's Memorandum Opinion and Order did not enter a judgment, and in fact left the full resolution of this rate case to this Court.

the construction application, the rate case would remain stayed indefinitely. In other words, to resolve this Catch-22, either RMLC's interpretation of the statute must be incorrect or Congress created a new ability to appeal immediately all construction application decisions regardless of whether they constitute final decisions on the merits, without explicitly saying so.

As stated, nothing in the text of 28 U.S.C. § 137, which by its title and content governs the division of business in the *district court*, even implies this second result. And while RMLC argues that the purpose of the amendments to section 137 was to preserve judicial resources, and that judicial resources would be wasted by ending the stay, RMLC Brief at 7, such a claimed congressional purpose is not sufficient for the Court to read into the statute a new grant of appellate jurisdiction over an interlocutory decision with no textual basis. *Cf. Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990) ("[T]he power to grant interlocutory appeal must be strictly limited to the precise conditions stated in the law. . . . [O]nly exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." (internal quotation marks and brackets omitted)). To the extent Congress's purpose in amending 28 U.S.C § 137 was to preserve judicial resources, that purpose was furthered by the stay in this case while Judge Stanton made his determination on the construction application, which prevented this Court from making a decision at odds with that eventual construction. "[N]o legislation pursues its purposes at all costs," *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987), however, and nothing in the text of section 137 indicates that the risk of judicial resource waste should displace all other considerations, including the interest of parties in a speedy resolution of their disputes.

Finally, the Court turns to RMLC's claim that the Supreme Court's recent decision in *Coinbase, Inc v. Bielski*, 143 S. Ct. 1915 (2023), bears on the issue before the Court. Dkt. 41. In

7

that case, the Supreme Court determined that a district court must stay its proceedings after denying a motion to compel arbitration when the losing party appeals as of right under 9 U.S.C. § 16(a). *Coinbase, Inc.*, 143 S. Ct. at 1918. But that case is distinguishable. First, unlike the statute currently before this Court, 9 U.S.C. § 16(a) provides an explicit right to an interlocutory appeal, creating a "rare statutory exception to the usual rule that parties may not appeal before final judgment." *Id.* at 1919. Second, resolution of a petition to compel arbitration determines whether a case will proceed in district court at all. In the current case, it is certain that litigation will continue in district court, the only question to be resolved is whether the matter will be decided in one proceeding or whether ASCAP will be severed to a second. Yet severance is generally not an appealable decision. *See Garber v. Randell*, 477 F.2d 711, 714-15 (2d Cir. 1973).

For the above reasons, the Court determines that the mandatory stay under 28 U.S.C. § 137(b)(2) is no longer in effect, as Judge Stanton has issued a "final determination of the construction application." RMLC mentions in passing that this Court should instead issue a discretionary stay. RMLC Brief at 8. RMLC bears the "heavy burden of demonstrating that a stay is warranted." *New York v. Trump*, 490 F. Supp. 3d 736, 741 (S.D.N.Y. 2020) (three judge court) (per curiam). It has presented no basis for this Court to find that it has met that burden for a discretionary stay, particularly given the potential prejudice to BMI arising from further delay in receiving compensation upon resolution of this case. *See* BMI Brief at 7-8.

Therefore, this case is unstayed. The parties have previewed that they disagree as to the next steps in this action, with RMLC suggesting that Judge Stanton lacked the authority to sever ASCAP from this action. RMLC Brief at 8. The Court will hold a conference to discuss this issue on August 3, 2023 at 11:30 a.m. The conference shall take place telephonically. At the scheduled

time, counsel for all parties should call (866) 434-5269, access code 9176261.  The Clerk of Court is respectfully directed to close the motion at Docket Number 36.

    SO ORDERED.

Dated: July 27, 2023
      New York, New York

                                     JOHN P. CRONAN
                                 United States District Judge