UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Radio Music License Committee, Inc., | |
| Petitioner, | 1:22-cv-05023 (JPC) (SDA) |
| -against- | |
| Broadcast Music, Inc., | **OPINION AND ORDER** |
| Respondent. | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/01/2024

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

Pending before the Court are motions by non-party Global Music Rights, LLC ("GMR"), pursuant to Rule 24 of the Federal Rules of Civil Procedure, to intervene in this action, and pursuant to Rule 26(c), for a protective order. (GMR Mots., ECF No. 65.) For the reasons set forth below, GMR's motions are GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Petitioner Radio Music License Committee, Inc. ("RMLC")[1] initiated this action on June 15, 2022 by filing a Petition for the determination of reasonable final license fees under a consent decree entered against Respondent Broadcast Music, Inc. ("BMI"),[2] and this action was randomly

---

[1] According to the Amended Petition, RMLC "is a non-profit Tennessee corporation that represents the interests of commercial radio stations concerning music licensing matters, including the negotiation and documentation of licenses from the major music performing rights organizations." (Am. Pet., ECF No. 46, ¶ 1.)

[2] BMI is one of the largest performing rights organizations ("PROs") in the country. *United States v. Broad. Music, Inc.*, 275 F.3d 168, 171 (2d Cir. 2001). BMI grants licenses to music users, collects license fees from them and distributes the royalties among its affiliated copyright holders. *Id*. BMI represents over 22.4 million musical works created and owned by more than 1.4 million songwriters, composers and music publishers. *See* BMI website, https://www.bmi.com/about [https://perma.cc/YQ2Q-LV2R]. BMI entered into a consent decree with the Department of Justice in 1966, which has since been amended (the "BMI Decree"). (Am. Pet. ¶ 2.) The BMI Decree restricts BMI's conduct and entitles entities making public

assigned to the Honorable John P. Cronan. *See Radio Music License Comm., Inc. v. Am. Soc'y of Composers, Authors & Publishers*, 684 F. Supp. 3d 165, 166 (S.D.N.Y. 2023).[3] RMLC had made a written application on its members' behalf to secure reasonable license fees and terms from BMI for the license term from January 1, 2022 through December 31, 2026 (the "License Term"). (Am. Pet. ¶ 3.) After unsuccessful negotiations between RMLC and BMI, RMLC filed this action. (*Id*.)

In its Amended Petition, filed on August 10, 2023, RMLC seeks a determination of reasonable rates and terms for blanket licenses, adjustable-fee blanket licenses and per-program licenses from BMI for the License Term. (Am. Pet. ¶ 3.) RMLC uses as a reference in its Amended Petition the rates in RMLC's most recent agreements with BMI and ASCAP. (*See id*. ¶¶ 20-21.) By contrast, in its Response to the Amended Petition, BMI asserts that an increase in rates is warranted based upon significantly higher rates negotiated between GMR[4] and RMLC itself or other large radio stations groups, many of which are represented by RMLC. (*See* Ans. to Am. Pet., ECF No. 49, ¶¶ 60-63.)

---

performances of the BMI repertory to seek a judicial determination of reasonable BMI license fees under the BMI Decree. (*Id*.)

[3] RMLC also had named as a respondent in its Petition initiating this action the American Society of Composers, Authors, and Publishers ("ASCAP"), which is another PRO. *See Radio Music*, 684 F. Supp. 3d at 166. On May 26, 2023, those portions of RMLC's Petition that related to ASCAP were assigned to another judge in this District. *See United States v. Broad. Music, Inc.*, No. 64-CV-03787 (LLS), 2023 WL 3788859, at *1 (S.D.N.Y. May 26, 2023).

[4] GMR is a PRO that operates by invitation only, with just over 160 songwriters on its roster, through whom GMR represents a little more than 90,000 individual musical compositions. (Grimmett Decl., ECF No. 68, ¶¶ 2-3.) GMR and BMI are two of the four PROs in the United States and are fierce competitors. (*See* GMR 8/12/24 Mem., ECF No. 66, at 1, 3, 12.) The other two PROs are ASCAP and SESAC Performing Rights, LLC ("SESAC"). (*See* BMI 8/23/24 Mem., ECF No. 80, at 6.)

On September 8, 2023, BMI served upon RMLC a First Request for the Production of Documents directed at RMLC. (Ex. D to Porter Decl., ECF No. 81-4.) The first two requests seek production by RMLC of the following:

1. All interim or final licenses and/or other agreements concerning the right to publicly perform musical works during any point in the Period [defined as January 1, 2018 to the present] that were negotiated, arbitrated, or litigated by the RMLC, on behalf of RMLC Stations, on the one hand and (a) ASCAP, (b) SESAC, (c) GMR, or (d) any other licensor, on the other.

2. All documents or communications concerning the negotiation of any interim or final license and/or other agreements concerning the right to publicly perform musical works during any point in the Period, whether or not such agreement was consummated, including the following: (a) any study or analysis prepared in connection with such negotiations, and any communications concerning such study or analysis; (b) communications between you and the licensor in connection with such negotiations; (c) documents provided to the licensor by you in connection with such negotiations; and (d) documents provided to you by the licensor in connection with such negotiations.

(*Id*. at 9.)[5]

On January 11, 2024, RMLC and BMI entered into a Stipulation and Protective Order ("Protective Order") in this action. (Prot. Order, ECF No. 53.) The Protective Order provides that a party may designate documents as "OUTSIDE COUNSEL ONLY" if such documents contain extremely sensitive confidential and/or confidential proprietary information the disclosure of which may compromise and/or jeopardize the supplying party's or a third party's business interests. (*Id*. ¶ 21.) If such designation is made, disclosure of such designated documents is limited to outside counsel employed or retained by the receiving party who are actually assisting

---

[5] On April 26, 2024, BMI served upon RMLC, in its capacity as representative of certain identified station groups, a First Supplemental Request for the Production of Documents directed at such station groups seeking similar documents. (Ex. E to Porter Decl., ECF No. 81-5.)

in this action; paralegals, stenographic, clerical, and litigation support employees of such outside counsel; independent contractors who are working on this action and under the direction of such outside counsel and to whom it is necessary that the materials be disclosed for purposes of this action; and, under certain circumstances, any outside consultant or expert (or their staffs) assisting in the action and to whom it is necessary to disclose the documents for purposes of this action. (*Id*. ¶ 22.) The Protective Order also contains a provision screening one of RMLC's outside counsel (*i.e.*, Kenneth L. Steinthal) from having access to non-RMLC BMI license agreements, or materials that would reveal the contents or negotiations of such agreements, because Mr. Steinthal is "involved in negotiating license agreements on behalf of the RMLC and other BMI licensees." (*Id*. ¶ 24.)

On April 8, 2024, RMLC's counsel sent a letter to GMR's counsel to notify them that BMI had requested RMLC to produce documents in discovery that may fall under certain sections of Confidential Settlement Agreements between GMR and each of Cox Radio, Cumulus Media and Midwest Communications; between GMR and Entercom (now Audacy); or between GMR and RMLC. (Ex. B to Marroso Decl., ECF No. 67-2, at 1-2.) RMLC requested that GMR provide notification whether GMR consented to disclosure of the documents pursuant to BMI's requests, which requests were set forth in the letter. (*Id*. at 2.) Thereafter, GMR did not consent. (*See* Ex. F to Porter Decl., ECF No. 81-6, at PDF p. 4.)

On April 11, 2024, BMI served a subpoena upon GMR for the production of documents. (Ex. A to Marroso Decl., ECF No. 67-1.) The subpoena seeks production from GMR of the following:

    1.    All interim or final licenses and/or other agreements concerning the right to publicly perform musical works during the Period [defined as January 1,

        2018 to the present] between you and (a) any Station[6] or (b) any Radio Group[7] or (c) the RMLC, including any riders, amendments, and side agreements.

2. All documents or communications concerning the negotiation of any interim or final license and/or other agreement with the RMLC, any Station, or Radio Group . . . .

3. For each year during the Period, documents sufficient to show the license fees paid to GMR by Stations, identified by FCC ID, call letters, and license type, broken out in the following categories: (a) license fees paid on a blanket basis; (b) license fees paid on a program-period basis; and (c) license fees attributable to New Media transmissions. If a license involves a flat fee arrangement, please provide the total amount of any flat fees and the total amounts due under any license, agreements and/or side letters.

4. All studies or analyses, including the methodology used and any supporting data or documents, conducted by or on behalf of GMR concerning the share or projected share of public performances by Stations of musical works during the Period in Your repertoire.

5. All studies or analyses, including the methodology used and any supporting data or documents reflecting projected station revenue for the relevant Period or any period thereafter.

6. All documents, communications, studies, or analyses concerning the appropriate rate or fees payable by Stations to GMR for the public performance of musical works.

7. All documents, communications, studies, or analyses concerning (a) the value of music, in general, to a Radio Group or Station and (b) the value of your repertoire to a Radio Group or Station.

8. All non-privileged documents and communications related to any settlement with the RMLC, any Station, or Radio Group.

---

[6] "Stations" are defined to encompass "the owners and operators of the approximately 10,000 FCC-licensed commercial broadcast radio stations operating in the United States." (Ex. A to Marroso Decl. at PDF p. 8.)

[7] "Radio Group" is defined as "an entity representing individual Stations under common ownership and each of the entity's present or former officers, directors, agents, representatives, employees, and affiliates." (Ex. A to Marroso Decl. at PDF p. 8.)

(*Id*. at PDF pp. 13-14.)[8]

In response to the subpoena, GMR produced, among other things, the settlement agreement resulting from an antitrust lawsuit between GMR and RMLC, a schedule that tabulates the license fee rates offered by GMR to each of almost 3,000 radio companies from 2022 through 2026 as a result of the settlement, the license agreement form offered by GMR to each of the aforementioned radio companies and GMR's repertory at the time of the settlement. (GMR 8/12/24 Mem. at 1, 4-5.) On June 26, 2024, GMR advised BMI that it would "oppose BMI's attempts to obtain additional GMR confidential information in [this action]." (Ex. C to Marroso Decl., ECF No. 67-3, at PDF p. 2.)

On July 18, 2024, RMLC sent a letter to GMR stating that BMI was insisting that RMLC produce additional GMR-related documents. (Ex. D to Marroso Decl., ECF No. 67-4, at PDF p. 2.) RMLC advised GMR that RMLC intended to produce to BMI relevant, non-privileged documents, designating such documents as "OUTSIDE COUNSEL ONLY" pursuant to the Protective Order in this action. (*Id*.)

Thereafter, GMR requested RMLC to identify the specific documents that RMLC was proposing to produce to BMI. (Ex. E to Marroso Decl., ECF No. 67-5, at PDF pp. 3, 5.) RMLC identified the documents to be produced to BMI as GMR's license agreements with Cumulus, Audacy and Cox; GMR's license agreements with Bonneville, Midwest and Hubbard; all the expert

---

[8] The documents requests served upon RMLC overlap with the document requests served by subpoena upon GMR. However, BMI is not seeking duplicate discovery of the same materials from both RMLC and GMR. (*See* BMI 8/23/24 Mem. at 3 n.3.)

reports from the SESAC 2023-24 arbitration that refer to GMR; and fees paid to GMR by Cumulus, Audacy, Cox, Bonneville, Midwest and Hubbard from 2017 to 2023.[9] (*Id*. at PDF pp. 2, 4.)

On August 12, 2024, GMR filed the motions now before the Court to intervene in this action and for a protective order barring RMLC from producing additional GMR documents to BMI. (GMR Mots. at 1-2.) On August 23, 2024, BMI filed its opposition to the motion to intervene and for a protective order. (*See* BMI 8/23/24 Mem.) On August 30, 2024, GMR filed its reply. (GMR Reply, ECF No. 88.[10])

## DISCUSSION

**I.   Motion To Intervene**

BMI does not challenge GMR's right to intervene for purposes of seeking a protective order. (*See* BMI 8/23/24 Mem. at 15 n.6 ("BMI is not opposing GMR's request to intervene for the limited purpose of seeking a protective order . . .").) The Court is satisfied that GMR's motion meets the requirements for intervention of right, pursuant to Rule 24(a)(2),[11] for the limited purpose of protecting its interest in the confidentiality of the Requested Discovery. *See Blum v.*

---

[9] These disputed documents were identified by BMI in its opposition memorandum as including individual licenses between its largest station group members and GMR; copies of an executed settlement agreement between other RMLC station group members and GMR that function as a license, as well as records of fees paid to GMR by those group members; production of expert reports from a recent rate-setting arbitration between RMLC and SESAC that reference some of the aforementioned materials; and settlement negotiation correspondence between GMR and RMLC (defined by BMI as the "Requested Discovery"). (BMI 8/23/24 Mem. at 2-3.) According to BMI, RMLC has agreed to produce the Requested Discovery. (*See id*. at 3.) The Court recognizes that there appears to be a difference between the scope of the "Disputed Information," as defined by GMR, and the Requested Discovery, as defined by BMI. (*See* GMR Reply at 10 n.4.) Based upon BMI's representation that RMLC has agreed to produce the Requested Discovery, this Opinion and Order requires production by RMLC of the Requested Discovery, in the manner set forth in Discussion Section II, *infra*.

[10] ECF No. 88 is filed under seal. A redacted version is publicly filed at ECF No. 86.

[11] *See* GMR 8/12/24 Mem. at 7-8 (discussing Rule 24(a)(2) requirements).

*Schlegel*, 150 F.R.D. 38, 39 (W.D.N.Y. 1993); *see also Det. Watch Network v. United States Immigr. & Customs Enf't*, No. 14-CV-00583 (LGS), 2016 WL 11793613, at *3 (S.D.N.Y. Sept. 1, 2016) ("[P]reventing the disclosure of commercially-sensitive and confidential information is a well-established interest sufficient to justify intervention under Rule 24(a)." (quoting *100Reporters LLC v. United States Dep't of Just.*, 307 F.R.D. 269, 275 (D.D.C. 2014)); Fed. R. Civ. P. 24 (Advisory Committee Notes, 1966 Amendment) ("An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.").

Accordingly, GMR's motion to intervene is GRANTED IN PART and DENIED IN PART. GMR will be allowed to intervene in this action for the limited purpose of protecting its interest in the confidentiality of the Requested Discovery. The caption of the case will remain unchanged.

**II.     Motion For Protective Order**

   **A.     Legal Standards**

Under Federal Rule of Civil Procedure 26(c), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential . . . commercial information not be revealed or revealed only in a specified way[.]." Fed. R. Civ. P. 26(c) (1)(G). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). The burden of showing good cause for the

issuance of a protective order falls on the party seeking the order. *See Brown v. Astoria Fed. Sav. & Loan Ass'n*, 444 F. App'x 504, 505 (2d Cir. 2011).

**B.     Analysis**

The Court finds, in its discretion, that GMR has not met its burden to show good cause for a protective order completely barring disclosure of the Requested Discovery that RMLC has agreed to produce.[12] The Court recognizes that the Requested Discovery is confidential. However, "courts commonly require parties to produce confidential documents; the confidentiality of those documents is protected not by denying access to them, but by entering a protective order to cover them." *Doe v. Benjamin Zaremski, M.D.*, No. 21-CV-03187 (ER), 2022 WL 2966041, at *10 (S.D.N.Y. 27, 2022). Here, there is a protective order already in place, pursuant to which RMLC intends to designate the Requested Discovery as "OUTSIDE COUNSEL ONLY."

The Court, however, finds that GMR has met its burden to show that it is entitled to additional protections, based upon GMR's representation that the Requested Discovery contains GMR's highly confidential, proprietary information. (*See* Grimmett Decl. ¶ 9; *see also* GMR Reply at 9-10.) BMI's outside counsel admits that they occasionally participate in licensing negotiations on behalf of BMI. (Porter Decl. ¶ 14.) As GMR notes, if BMI's outside counsel become engaged in future licensing negotiations on behalf of BMI with radio companies while armed with GMR's

---

[12] GMR argues that the Requested Discovery is not relevant and that BMI does not have a need for it. (GMR 8/12/24 Mem. at 10-12.) Even assuming that a non-party like GMR has standing to raise these objections in circumstances where the producing party has not raised them, the Court carefully has reviewed the arguments presented (*compare id.* & GMR Reply at 3-5 *with* BMI 8/23/24 Mem. at 18-21) and finds, in its discretion, that the Requested Discovery is relevant and proportional to the needs of the case.

highly confidential, proprietary information, GMR and its licensees could suffer competitive harm.[13] (*See* GMR Reply at 9-10.) Accordingly, GMR's motion for a protective order is GRANTED IN PART and DENIED IN PART.

In the first instance, the Requested Discovery to which GMR objects[14] shall be produced by RMLC to up to three attorneys at the law firm of Milbank LLP (BMI's outside counsel) who certify to the Court that, for a period of three years from the date of their certifications, they will not be involved in licensing negotiations on behalf of BMI (the "Certifying Milbank Counsel").[15] RMLC shall designate such documents produced as "CERTIFYING MILBANK COUNSEL ONLY." BMI shall not use documents designated as "CERTIFYING MILBANK COUNSEL ONLY," and the Certifying Milbank Counsel shall not disclose such documents to anyone else, absent GMR's written consent or further Order of the Court. If BMI seeks to use any portion of the documents

---

[13] As GMR notes (*see* GMR Reply at 10), there are additional restrictions in place in the Protective Order with respect to one of RMLC's counsel because he is involved in negotiating license agreements on behalf of the RMLC and other BMI licensees. (*See* Prot. Order ¶ 24.)

[14] The Court notes that GMR does not object to production of certain of the Requested Discovery. (*See* GMR 8/12/24 Mem. at 6.) The portions of the Requested Discovery to which GMR does not object shall be produced by RMLC with the designation "OUTSIDE COUNSEL ONLY." The additional restrictions that follow only apply to the portions of the Requested Discovery to which GMR objects.

[15] This narrow, temporal curtailment on the practice of up to three Milbank LLP attorneys does "not restrict[] [Milbank LLP's] practice any more than [the Court] deems necessary to protect" GMR's confidential, proprietary information. *See Intell. Ventures I, LLC v. Lenovo Grp. Ltd.*, 392 F. Supp. 3d 138, 140-41 (D. Mass. 2019) (supplementing protective order to prevent outside "counsel, who have access to certain highly sensitive documents, from . . . advising clients on acquiring patents or patent applications relating to the subject matter of the patents involved in th[e] lawsuit" because "[outside] counsel may inadvertently use the information in [patent holder's] technical documents when advising other clients on acquiring patents or patent applications relating to the same subject matter as the patents-in-suit"). Notwithstanding any risks associated with the Certifying Milbank Counsel acting as advocates on behalf of BMI in rate court proceedings (*see* GMR 8/12/24 Mem. at 15), the Certifying Milbank Counsel shall be permitted to represent BMI in litigated proceedings. The restrictions set forth herein are narrowly tailored and only restrict the Certifying Milbank Counsel from being involved in licensing negotiations on behalf of BMI for a three-year period.

designated as "CERTIFYING MILBANK COUNSEL ONLY," or if the Certifying Milbank Counsel seek to disclose any portion of such documents, Certifying Milbank Counsel shall meet and confer with GMR about such use and/or disclosure, and if agreement cannot be reached, BMI may make an appropriate application to the Court.

## CONCLUSION

For the foregoing reasons, GMR's motions to intervene and for a protective order are GRANTED IN PART and DENIED IN PART. GMR hereby is permitted to intervene for the limited purpose of protecting its interest in the confidentiality of the Requested Discovery. No later than September 6, 2024, any Certifying Milbank Counsel shall file a Declaration to the ECF docket certifying: (1) that, for a period of three years after the date of the Declaration, they will not be involved in licensing negotiations on behalf of BMI; and (2) that BMI will not use documents designated as "CERTIFYING MILBANK COUNSEL ONLY," and the Certifying Milbank Counsel will not disclose such documents to anyone else, absent GMR's written consent or further Order of the Court. Within seven days of the date that a Declaration is filed by a Certifying Milbank Counsel, the Requested Discovery shall be produced by RMLC. The Requested Discovery to which GMR does not object shall be produced by RMLC to BMI with the designation "OUTSIDE COUNSEL ONLY." The Requested Discovery to which GMR objects shall be produced by RMLC only to any Certifying Milbank Counsel with the designation "CERTIFYING MILBANK COUNSEL ONLY."[16]

---

[16] The provisions of paragraph 29 of the Protective Order (regarding objections to the propriety of designations) shall apply to the documents designated as "CERTIFYING MILBANK COUNSEL ONLY." That is, after any Certifying Milbank Counsel has reviewed the Requested Discovery, BMI may challenge whether any portion of the documents produced contain GMR's highly confidential, proprietary information, and/or whether any designation should be downgraded to an "OUTSIDE COUNSEL ONLY" or other designation.

Dated: New York, New York
September 1, 2024

_____
**STEWART D. AARON**
**United States Magistrate Judge**