```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/03/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Radio Music License Committee, Inc.,

                    Petitioner,

-against-

Broadcast Music, Inc.,

                    Respondent.

1:22-cv-05023 (JPC) (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

Pending before the Court is a motion by Respondent Broadcast Music, Inc. ("BMI") for an order modifying "Certifying Milbank Counsel Only" ("CMCO") document designations made by non-party Global Music Rights, LLC ("GMR") and lifting restrictions placed on "Certifying Milbank Counsel."[1] (BMI 12/2/24 Not. of Mot., ECF No. 129.) For the reasons set forth below, BMI's motion is GRANTED.

## BACKGROUND

The background of the discovery dispute between BMI and GMR is set forth in this Court's September 1, 2024 Opinion and Order (the "September Order"), *see Radio Music*, 347 F.R.D. at 263-66, with which the Court assumes familiarity.

In accordance with the procedure set forth in the September Order, on October 29, 2024, after receiving direction from GMR regarding designations, Petitioner Radio Music License

---

[1] "Certifying Milbank Counsel" are attorneys at the law firm of Milbank LLP (BMI's outside counsel) who certified to the Court that, for a period of three years from the date of their certifications, they would not be involved in licensing negotiations on behalf of BMI. *See Radio Music License Comm., Inc. v. Broad. Music, Inc.*, 347 F.R.D. 262, 268 (S.D.N.Y. 2024). Documents designated as CMCO only may be disclosed to Certifying Milbank Counsel and those attorneys are prohibited from disclosing such documents to anyone else, absent GMR's written consent or further Order of the Court. *Id*.

Committee, Inc. ("RMLC") produced unredacted CMCO versions of GMR agreements with Audacy, Inc. (f/k/a Entercom Operations Inc.) ("Audacy"), Cox Radio, LLC ("Cox") and Cumulus Media New Holdings, Inc. ("Cumulus"), along with redacted Outside-Counsel-Only ("OCO")[2] versions. (BMI 12/2/24 Mem., ECF No. 130, at 6.) On November 11, 2024, RMLC produced an unredacted CMCO version of a GMR agreement with Townsquare Media, Inc. ("Townsquare"), along with a redacted OCO version. (*Id*. at 7.) On November 19, 2024, RMLC produced unredacted CMCO versions of three GMR agreements with iHeartMedia, Inc. ("iHeart"), along with redacted OCO versions. (*Id*. at 9.) BMI objected to GMR's CMCO designations and BMI and GMR met and conferred regarding BMI's objections. (*Id*. at 9.) Thereafter, GMR down-designated a number of its prior designations from CMCO to OCO, but GMR stood by its remaining CMCO designations. (*Id*. at 10.) The remaining seven agreements in which GMR has designated certain terms as CMCO are as follows:[3] Audacy,[4] Cox,[5] Cumulus,[6] iHeart (2016, 2019 and 2021)[7] and Townsquare.[8]

On December 2, 2024, BMI filed the instant motion, in which BMI seeks to modify GMR's CMCO designations and to lift the restrictions placed upon Certifying Milbank Counsel by the

---

[2] Under the Protective Order in this action, a Supplying Party (as defined therein) may produce documents that "contain extremely sensitive confidential and/or confidential proprietary information" with an OCO designation. (Prot. Order, ECF No. 53, ¶ 21.)

[3] These seven agreements entered into between GMR and the RMLC stations identified in the text above, which are the subject of the instant motion, are attached as exhibits both to the Declaration of Andrew Leighton Porter, dated December 2, 2024 (Porter 12/2/24 Decl., ECF No. 131), and as exhibits to the Declaration of David Marroso, dated December 10, 2024 (Marroso 12/10/24 Decl., ECF No. 134).

[4] Ex. F to Porter 12/2/24 Decl.; Ex. K to Marroso 12/10/24 Decl.

[5] Ex. G to Porter 12/2/24 Decl.; Ex. M to Marroso 12/10/24 Decl.

[6] Ex. H to Porter 12/2/24 Decl.; Ex. L to Marroso 12/10/24 Decl.

[7] Exs. K to M to Porter 12/2/24 Decl.; Exs. G to I to Marroso 12/10/24 Decl.

[8] Ex. I to Porter 12/2/24 Decl.; Ex. J to Marroso 12/10/24 Decl.

September Order. (BMI 12/2/24 Not. of Mot.; BMI 12/2/24 Mem.; Porter 12/2/24 Decl.) On December 10, 2024, GMR filed its opposition papers. (GMR 12/10/24 Mem., ECF No. 133; Marroso 12/10/24 Decl.; Grimmett 12/10/24 Decl., ECF No. 135.) On December 13, 2024, BMI filed its reply papers. (BMI 12/13/24 Reply, ECF No. 137; Porter 12/13/24 Decl., ECF No. 138.) On January 2, 2025, the Court held a telephone conference with BMI and GMR to discuss the pending motion.

## LEGAL STANDARDS

"Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."[9] *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 415 (E.D.N.Y.2007) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Rhinehart*, 467 U.S. at 36 (footnote omitted). "The touchstone of the court's power under Rule 26(c) is the requirement of 'good cause.'" *In re Zyprexa Injunction*, 474 F. Supp. 2d at 415 (citation omitted). The burden of establishing good cause then lies with the

---

[9] "Protective orders that limit the disclosure and use of confidential information produced by the parties during discovery have become common in litigation." *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 246 (D. Kan. 2010). For example, "[i]n cases involving patent infringement and other claims relating to sensitive intellectual property, it is not uncommon for a protective order to have different levels, or tiers, of confidentiality, with each tier having different restrictions and protections, such as limiting the individuals who have access to the information." *Id*. (citation omitted). If a two-tier system is used, the second tier, usually called "Attorneys' Eyes Only" or "Highly Confidential" is reserved for more sensitive information, such as competitive pricing, customer lists or competitive business financial information. *See id*. Courts on occasion use a third tier, often called "Outside Counsel Only," for particularly sensitive information. *See Uniroyal Chemical Co. Inc. v. Syngenta Crop Protection*, 224 F.R.D. 53, 56 (D. Conn. 2004) (three tier protective order's most restrictive tier restricted disclosure to outside counsel and outside experts).

party seeking to prevent the disclosure of documents.[10] *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004). "Once a protective order is entered, a party must continue to show good cause for confidentiality when challenged." *In re Bank One Sec. Litig.*, 222 F.R.D. 582, 586 (N.D. Ill. 2004) (citing *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000)).

## DISCUSSION

In its motion, BMI argues that the Court should order all of GMR's CMCO-designated material down-designated to OCO. (BMI 12/2/24 Mem. at 11-20.) In response, GMR argues that the contractual terms it designated as CMCO reflect highly competitive, sensitive information, thus warranting the CMCO designation. (GMR 12/10/24 Mem. at 14-18.)[11] The Court first considers the CMCO-designated agreements that were produced in a prior lawsuit and then considers the remaining five agreements.

**I.   Previously-Produced Agreements**

The iHeart 2016 agreement and the Townsquare agreement were produced to BMI by GMR in a prior lawsuit with only an OCO designation. (*See* BMI 12/2/24 Mem. at 3-4.) In that prior lawsuit, GMR initially had resisted production of these documents on grounds similar to those raised here. (*See* GMR Mem. Support of Motion to Quash, *In Re Subpoena to Global Music Rights, LLC*, Ex. A to Porter 12/2/24 Decl., ECF No. 131-1, at 1-2 ("Since BMI's . . . counsel in these

---

[10] The Court notes that the Protective Order in this case, which applies to challenges to GMR's CMCO designations, *see Radio Music*, 347 F.R.D. at 268 n.16, provides that, on a motion seeking to modify a disputed designation, "it will be the burden of the party imposing a limitation on circulation of discovery materials to justify that limitation." (Prot. Order ¶ 29.)

[11] In numerous places in its opposition memorandum, GMR cites to case law addressing motion to seal documents filed on public court dockets. (*See* GMR 12/10/24 Mem. at 14, 23-24.) This case law (identified by BMI in its reply memorandum, *see* BMI 12/13/24 Reply at 5 n.7) is inapposite, as documents designated with the OCO designation advocated by BMI will be filed under seal, pursuant to the provisions of the Protective Order in this case. (*See* Prot. Order ¶ 33.)

proceedings also act as their clients' negotiators, 'outside counsel's eyes only' restrictions would not cure the prejudice to GMR.").) However, GMR later agreed to produce the documents with an OCO designation. (*See* BMI 12/2/24 Mem. at 4.)

GMR argues that it produced the iHeart 2016 agreement and the Townsquare agreement with an OCO designation as part of a compromise and that there would be an incremental risk of harm to GMR if those agreements were produced in this case with such a designation. (GMR 12/10/24 Mem. at 10-11, 18-19.) However, GMR also agreed to produce these same agreements, as part of a compromise in this action. (BMI 12/2/24 Mem. at 12.) Surely, if the two agreements contained highly competitive, sensitive information that required greater protections than an OCO designation provides, GMR would not have produced the documents with an OCO designation in the prior lawsuit and would not have offered to produce them with such a designation in this action. In the circumstances presented, the Court finds that GMR has not met its burden of showing good cause to have greater protection than an OCO designation for the iHeart 2016 agreement or the Townsquare agreement.

Accordingly, the Court hereby ORDERS that the iHeart 2016 agreement and the Townsquare agreement be produced to BMI in full pursuant only to an OCO designation.

**II.   Remaining Five Agreements**

The Court carefully has reviewed the CMCO designations contained in the five remaining agreements. In doing so, among other considerations, the Court has considered the agreement terms that GMR designated as CMCO, as compared to the agreement terms contained in the iHeart 2016 agreement and the Townsquare agreement, as well as the form of GMR's agreement

5

with the majority of RMLC members that was produced in this action in June 2024 on an OCO basis. (*See* Ex. E to Porter 12/2/24 Decl.; *see also* BMI 12/2/24 Mem. at 4.)

As to the price terms of the agreements in question, the Court finds that an OCO designation provides adequate protection to GMR. Even if one of BMI's outside counsel is involved in negotiations on behalf of BMI of future licensing agreements, such counsel is prohibited from divulging GMR's price terms to anyone in such negotiations. GMR has not met its burden to show that further restrictions are necessary.

Other terms of the agreements as to which GMR asserts a CMCO designation are similar to terms in the previously produced OCO agreements discussed in Discussion Section I, *supra*, or are terms that BMI is incapable of offering. (*See* BMI 12/2/24 Mem. at 16-19.) The Court agrees with BMI that these terms do not warrant a CMCO designation. To be sure, the information that GMR has designated as CMCO is competitively sensitive and is deserving of protection. However, in the Court's view, having now reviewed the particular documents and information in question, an OCO designation provides adequate protection for such information. The Court finds that GMR has not met its burden to show good cause for the need of any protection greater than an OCO designation for the remaining five agreements. Nor has GMR met its burden to show the need for a CMCO designation for the record of fees paid to GMR by radio station groups. (*See* BMI 12/2/24 Mem. at 7, 13-16.)

Accordingly, the Court hereby ORDERS that the remaining five agreements, as well as the record of fees paid to GMR by radio station groups, be produced to BMI in full pursuant only to an OCO designation.

\*   \*   \*

GMR states in its opposition memorandum: "In the end, the Court has a single question to answer: is non-party GMR entitled to minimal protection of just a few of its most commercially sensitive terms from a few of its most important licenses?" (GMR 12/10/24 Mem. at 3.) The answer to that question, of course, is yes. GMR's confidential information is receiving much greater than "minimal protection." GMR is being permitted to designate its agreements as OCO, which under the Protective Order in this case is reserved for documents that "contain extremely sensitive confidential and/or confidential proprietary information." (*See* Prot. Order ¶ 21.)

The Court expects BMI's counsel to diligently enforce the OCO restrictions and ensure that the designated documents and information produced by GMR are not divulged to BMI and are not used in BMI license agreement negotiations. Based upon the Court's review of the information that GMR has designated CMCO, the Court finds that such information is not of a type that a BMI lawyer inadvertently might use it during BMI license agreement negotiations to the competitive disadvantage of GMR. Accordingly, the risk of inadvertent disclosure identified in *Intell. Ventures I, LLC v. Lenovo Grp. Ltd.*, 392 F. Supp. 3d 138, 140-41 (D. Mass. 2019)—which was cited by this Court in the September Order, *see Radio Music*, 347 F.R.D. at 268 n.15—does not exist with respect to the information at issue.

Finally, the Court notes that BMI reserved the right to move for sanctions under Rule 11 of the Federal Rules of Civil Procedure. (BMI 12/2/24 Mem. at 21.) Rule 11(c)(2) contains a 21-day safe harbor provision. *See* Fed. R. Civ. P. 11(c)(2). Specifically, the Rule requires that, before a Rule 11 motion can be filed, it must be served on the offending party and that party must be given an opportunity to "appropriately correct[]" any contention within 21 days. *Id*. Thus, unless BMI served a Rule 11 motion upon GMR 21 days before BMI filed its motion at ECF No. 129, BMI

cannot properly file a Rule 11 motion against GMR. *See Kumaran v. Nat'l Futures Ass'n*, No. 20-CV-03668 (GHW) (SDA), 2024 WL 3429128, at *3 (S.D.N.Y. July 16, 2024). In any event, the Court finds that GMR's legal contentions do not go beyond the scope of what is permissible under Rule 11.

## CONCLUSION

For the foregoing reasons, BMI's motion is GRANTED. All the CMCO designations made by GMR hereby are downgraded to OCO. Since all the CMCO designations have been downgraded, there no longer is any need for the restrictions placed on Certifying Milbank Counsel and all such restrictions hereby are lifted.

No later than January 17, 2025, RMLC shall produce to BMI the documents and information that are addressed in this Order, subject to only an OCO designation. No later than January 17, 2025, BMI and GMR shall file under seal unredacted versions of the documents respectively filed by them at ECF Nos. 130, 131, 133, 134 and 137.

The parties are directed to meet and confer with respect to any further discovery regarding the documents that are the subject of this Order. No later than January 17, 2025, the parties shall file a joint letter setting forth any unresolved disputes regarding the scope of such discovery and proposed revised deadlines for the completion of discovery.

Dated:     New York, New York
           January 3, 2025

_____
**STEWART D. AARON**
**United States Magistrate Judge**